**LOUISVILLE AND NASHVILLE RAILROAD COMPANY, Plaintiff,**

v.

**Honorable Winfield DUNN, Governor of the State of Tennessee, et al., Defendants.**

**Civ. No. 6432.**

United States District Court,
M. D. Tennessee,
Nashville Division.

Jan. 19, 1972.

David M. Keeble, Hooker, Keeble, Dodson & Harris, Nashville, Tenn., and Philip M. Lanier, Louisville, Ky., for plaintiff.

Milton Rice, Asst. Atty. Gen., Nashville, Tenn., for defendants.

Before PHILLIPS and MILLER, Circuit Judges, and GRAY, District Judge.

## MEMORANDUM

### PER CURIAM.

As stated in the complaint herein, "[t]his is a civil action in equity seeking to have the Court to declare unconstitutional, illegal and void a proposed amendment to Article II, Section 28 of the Constitution of the State of Tennessee in accordance with the resolution adopted by the Constitutional Convention of 1971, and to enjoin the Referendum or election to reject or ratify said proposed amendment, to be held on August 3, 1972." [1] The jurisdictional bases for the action are, as set forth in the complaint, both federal question and diversity of citizenship.[2]

Since the proposed amendment, if submitted as is to the voters and ratified by them, would be a measure of state-wide application, plaintiff requested that a three-judge court be convened under the provisions of 28 U.S.C. § 2281 and 28 U.S.C. § 2284. Upon initial consideration by the single judge, whose function is to determine if, on the face of the complaint, a ". . . substantial federal constitutional question is presented . . ." Jones v. Branigin, 433 F.2d 576, 579 (6th Cir. 1970), it appeared that, indeed, a three-judge court was required. Consequently, such a court was called, under the provisions of 28 U.S.C. § 2284. However, upon further consideration, it became apparent that any "substantial federal constitutional question[s] which might be raised by the proposed amendment are presently beyond the power of a federal court to consider and that, accordingly, further consideration of this action by a statutory three-judge court is not in order. The reasons for this conclusion are set forth, briefly, hereinafter.

The instant complaint sets forth several grounds upon which plaintiff contends that the proposed amendment would, if ratified, be illegal. The first two of these grounds (set forth in section 11 of the complaint) are that the proposal violates the equal protection and due process clauses of the fourteenth amendment to the Constitution of the United States.[3] The remaining grounds (set forth in sections 12 and 13 of the complaint) involve purely matters of state law—more specifically, they are, in substance, that the Constitutional

---

1. A copy of the proposed amendment is attached to this order as Appendix I.

2. The complaint alleges that plaintiff ". . . is a corporation chartered under the laws of the State of Kentucky, and is a resident of said state, with its principal office at Louisville, Kentucky . . . [and] no principal office in Tennessee." The named defendants are various officials of the State of Tennessee.

3. There is also some mention in the complaint of commerce clause violation. However, the same considerations set forth herein apply to the commerce clause ground.

Convention which drafted the proposal, as well as the proposal itself, fail to comply with Article XI, Section 3 of the Tennessee Constitution in several enumerated respects. Thus, the jurisdiction *vel non* of a statutory three-judge court in this case turns upon the *present* substantiality of the two federal constitutional grounds, set forth above, for "[t]he 'unconstitutionality' clause of § 2281 can hardly be thought to encompass the voiding of a state statute [4] for inconsistency with the state constitution [or some other state statute]." Swift & Co. v. Wickham, 382 U.S. 111, 126, 86 S. Ct. 258, 267, 15 L.Ed.2d 194 (n. 25) (1965).

■ It is possible that the non-constitutional grounds set forth in the complaint may furnish a basis for some sort of relief under Tennessee law—a matter upon which this court expresses no opinion. But it is readily apparent from the face of the complaint, not only that the proposed amendment herein in question is not presently effective, but also that it may never become so. Thus, stated in terms of standing, "[s]ince the legislation is not presently effective and may never be effective, it cannot presently affect the rights of the complaining [party], and [plaintiff], therefore, [has] no standing to challenge its constitutionality. In this posture, it would be inappropriate for this Court to adjudge the purely hypothetical constitutional question." Moss v. Burkhart, 220 F.Supp. 149, 152 (W.D.Okl.1963) (three-judge court), aff'd sub nom. Williams v. Moss, 378 U.S. 558, 84 S.Ct. 1907, 12 L.Ed.2d 1026 (1964) (per curiam).[5] Or, stated solely in terms of jurisdiction, "[d]etermination of the . . . constitutionality of legislation in advance of its immediate adverse effect in the context of a concrete case involves too remote and abstract an inquiry for the proper exercise of the judicial function," International Longshoremen's and Warehousemen's Union v. Boyd, 347 U.S. 222, 224, 74 S. Ct. 447, 448, 98 L.Ed. 650 (1954), for, ". . . by the express terms of the Constitution, the exercise of the judicial power is limited to 'cases' and 'controversies.' Beyond this it does not extend, and unless it is asserted in a case or controversy within the meaning of the Constitution, the power to exercise it is nowhere conferred." Muskrat v. United States, 219 U.S. 346, 356, 31 S. Ct. 250, 253, 55 L.Ed. 246 (1911):

It follows that this court is unable to pass upon the merits of the constitutional grounds set forth in the complaint. The complaint must be dismissed, insofar as it is based upon such grounds, and the case must be remitted to the single district judge for consideration of the remaining grounds upon which plaintiff relies. An appropriate order, in accordance herewith, will enter.

APPENDIX I: This Appendix consists of a copy of the copy of the proposed amendment which is attached to the complaint as "Exhibit A."

RESOLUTION NO. 74
By
Scott
Schoocraft
Overcast
Claiborne
Stuart
McCartt

A RESOLUTION relative to the revision of Article II, Section 28, of the Constitution of Tennessee, providing for the deletion of the present section and substituting in lieu

4. Constitutional amendments are on an equal plane with state statutes for purposes of § 2281 considerations, for both qualify as "legislation." *See* Hyden v. Baker, 286 F.Supp. 475 (M.D.Tenn.1968) (three-judge court, Phillips, J., dissenting).

5. Affirmed on the merits, but remanded for further proceedings with respect to relief. 378 U.S. at 559, 84 S.Ct. 1907, 12 L.Ed.2d 1026.

thereof a section providing for the classification of real property and tangible and intangible personal property and providing for exemptions of certain real property, tangible personal property and intangible personal property.

BE IT RESOLVED, By the Limited Constitutional Convention of 1971 that Article II, Section 28, of the Constitution of the State of Tennessee be amended by deleting the same in its entirety and substituting in lieu thereof the following provisions, to be submitted to a vote of the people for ratification:

In accordance with the following provisions, all property real, personal or mixed shall be subject to taxation, but the Legislature may except such as may be held by the State, by Counties, Cities or Towns, and used exclusively for public or corporation purposes, and such as may be held and used for purposes purely religious, charitable, scientific, literary or educational, and shall except the direct product of the soil in the hands of the producer, and his immediate vendee, and the entire amount of money deposited in an individual's personal or family checking or savings accounts. For purposes of taxation, property shall be classified into three classes, to wit: Real Property, Tangible Personal Property and Intangible Personal Property.

Real Property shall be classified into four (4) subclassifications and assessed as follows:

(a) Public Utility Property, to be assessed at fifty-five (55%) per cent of its value;

(b) Industrial and Commercial Property, to be assessed at forty (40%) per cent of its value;

(c) Residential Property, to be assessed at twenty-five (25%) per cent of its value, provided that residential property containing two (2) or more rental units is hereby defined as industrial and commercial property; and

(d) Farm Property, to be assessed at twenty-five (25%) per cent of its value.

House trailers, mobile homes, and all other similar movable structures used for commercial, industrial, or residential purposes shall be assessed as Real Property as an improvement to the land where located.

The Legislature shall provide tax relief to elderly low-income taxpayers through payments by the State to reimburse all or part of the taxes paid by such persons on owner-occupied residential property, but such reimbursement shall not be an obligation imposed, directly or indirectly, upon Counties, Cities or Towns; provided, that such tax relief for the years 1973 through 1977 shall be not less than an amount equal to the State, County, and Municipal Taxes on Five Thousand ($5,000) Dollars worth of the full market value (or One Thousand Two Hundred Fifty ($1,250) Dollars of the assessed value) of property used for a residence by any taxpayer over sixty-five (65) years of age for a period of one (1) year prior to the date of assessment; provided further, that such relief shall not extend to persons having a total annual income from all sources in excess of Four Thousand Eight Hundred ($4,800) Dollars.

The Legislature may provide tax relief to home owners totally and permanently disabled, irrespective of age, as provided herein for the elderly.

Tangible Personal Property shall be classified into three (3) subclassifications and assessed as follows:

(a) Public Utility Property, to be assessed at fifty-five (55%) per cent of its value;

(b) Industrial and Commercial Property, to be assessed at thirty (30%) per cent of its value; and

(c) All other Tangible Personal Property, to be assessed at five (5%) per cent of its value; provided, however, that the Legislature shall exempt Seven Thousand Five Hundred ($7,500) Dollars worth of such Tangible Personal Property which shall cover personal household goods and furnishings, wear-

ing apparel and other such tangible property in the hands of a taxpayer.

The Legislature shall have power to classify Intangible Personal Property into subclassifications and to establish a ratio of assessment to value in each class or subclass, and shall provide fair and equitable methods of apportionment of the value of same to this State for purposes of taxation. Banks, Insurance Companies, Loan and Investment Companies, Savings and Loan Associations, and all similar financial institutions, shall be assessed and taxed in such manner as the Legislature shall direct; provided that for the year 1973, or until such time as the Legislature may provide otherwise, the ratio of assessment to value of property presently taxed shall remain the same as provided by law for the year 1972; provided further that the taxes imposed upon such financial institutions, and paid by them, shall be in lieu of all taxes on the redeemable or cash value of all of their outstanding shares of capital stock, policies of insurance, customer savings and checking accounts, certificates of deposit, and certificates of investment, by whatever name called, including other intangible corporate property of such financial institutions.

The ratio of assessment to value of property in each class or subclass shall be equal and uniform throughout the State, the value and definition of property in each class or subclass to be ascertained in such manner as the Legislature shall direct. Each respective taxing authority shall apply the same tax rate to all property within its jurisdiction.

The Legislature shall have power to tax merchants, peddlers, and privileges, in such manner as they may from time to time direct, and the Legislature may levy a gross receipts tax on merchants and businesses in lieu of ad valorem taxes on the inventories of merchandise held by such merchants and businesses for sale or exchange. The portion of a Merchant's Capital used in the purchase of merchandise sold by him to non-residents and sent beyond the State, shall

not be taxed at a rate higher than the ad valorem tax on property. The Legislature shall have power to levy a tax upon incomes derived from stocks and bonds that are not taxed ad valorem.

This amendment shall take effect on the first day of January, 1973.

ADOPTED: September 14, 1971

PRESIDENT OF THE
    CONSTITUTIONAL CONVENTION

SECRETARY OF THE
    CONSTITUTIONAL CONVENTION